EASTEX FINANCE CO. v. BRYANT.

In Banc. Oct. 24, 1949.

No. 37214 (42 So. (2d) 418)

**R. B. Reeves,** for appellant.

**B. D. Statham,** for appellee.

**McGehee, C. J.**

The 1941 model Plymouth automobile involved in this suit was sold by a local dealer somewhere in east Texas to one B. W. Davis, on June 30, 1947, for the sum of $1438.00, and there was retained by the seller a contractual purchase-money lien thereon for the sum of $908.10 of said purchase price. This balance was payable in monthly installments of approximately $60.00 each, and none of which deferred installments was paid. The purchase-money note, together with the lien, were sold by the dealer to the appellant, Eastex Finance Company, at the time of the sale of the automobile to the said B. W. Davis.

After three monthly installments on the note had become past due and unpaid, the Finance Company brought suit in the County Court of Pike County, Mississippi, for the indebtedness, and caused a writ of summons and seizure to be issued for the seizure and sale of the automobile for this balance due on the purchase price, and obtained a judgment against the said Davis accordingly.

The judgment in favor of the Finance Company, and against the defendant, Davis, was rendered subject to the claim of Burnis Bryant, d/b/a Gulf Service Station, at Magnolia, Mississippi, for the sum of $553.41 on labor and repairs done, and materials furnished, as alleged by the claimant, in connection with the use and operation of the said automobile.

The claimant's issue was thereafter tried by the County Court Judge without the intervention of a jury, and the sum of $350.00 of the total sum claimed as a mechanic's and materialmen's lien, under Section 353, Code of 1942, on the automobile was allowed by the court and such judgment was affirmed on appeal to the circuit court. That statute creates a lien in favor of the materialmen and workmen on "all carriages, buggies, wagons, plows, or any article constructed, manufactured or repaired for any person, and at his instance . . . ". The issue here is as to whether or not $350.00 worth of labor was done and materials furnished for the repair of the automobile, the said vehicle not having been constructed or manufactured by the alleged mechanic and materialman.

A good portion of the purported itemized account, which was relied upon by the claimant to sustain his lien, and to the correctness of which he testified while giving his opinion and conclusion that all of the items on the account were necessary for the successful operation and preservation of the automobile, and to prevent its deterioration, is for gas, oil, grease, brake fluid, and "wash jobs", none of which is allowable as a lien against the car under the statute in question.

In the case of Hardy v. Watkins, 150 Miss. 861, 117 So. 255, 256, the Court held that where the plaintiff sold tires and tubes in the usual course of trade, and one of his employees removed old tires from the automobile, replacing them with new ones, without making any charge for such labor, plaintiff was not entitled to a mechanic's lien on the automobile under Section 3075, Code of 1906, though new tires were necessary to preserve the property and to permit its operation, since the lien created by the statute applies only where labor and material are employed in the construction or manufacture or repair of articles enumerated in the statute. This section of the Code of 1906 is the same as Sections 353 and 355, Code of 1942.

In the case, supra, the opinion of the Court states: "It is contended that the new tires were necessary to preserve the property and permit its operation. The same could be said of other accessories purchased for use on the car. This would not however, operate to create the merchanic's lien on the car in favor of the seller of such accessories. The learned circuit judge heard the case on the record from the county court, affirmed the judgment thereof, and rendered a written opinion denying the application of the lien. In this we think he was correct."

Therefore, the Service Station could have no lien for the price or value of any of the items hereinbefore mentioned, nor for any accessories which were sold by the said Service Station in the regular course of business, and where no labor was both performed and charged for in the installation of such accessories in the "repairing" of the automobile.

On the itemized account of $553.41, covering the period from July 23, 1947, to October 10, 1947, there are charges for two batteries which are guaranteed for twelve months, three fuel oil pumps, two battery cables and four or five sets of "points". The question arises as to wheth-

er or not, if all of these materials were furnished, there would be a lien on the automobile for the price or value of any of such materials, except such as were in or on the automobile at the time the mechanic and material-man intervened in the suit to enforce his alleged lien therefor, and except where there were charges for labor performed and charged for in the installation thereof. At any rate, the cause must be reversed and remanded for a new trial for the reason that we are not advised by the record before us as to the specific items allowed and disallowed, and we are unable to find allowable items on the account, such as to closely approximate the judgment of $350.00 given as a mechanic's and materialman's lien against the automobile.

As to a mechanic's lien it was held in Deluxe Foods Corporation v. Johnson, Miss., 174 So. 245, that such a lien does not exist unless the evidence discloses that physical toil was the main part of services rendered by the party claiming the lien. As to a materialman's lien, the same does not exist under Section 353, Code of 1942, unless the materials come within the requirements of the case of Hardy v. Watkins, supra.

In the case of Moorhead Motor Co. v. H. D. Walker Auto Co., 133 Miss. 63, 97 So. 486, the Court did not pass on the question of whether or not these several items charged in the list set forth in the opinion of the Court were allowable under the mechanic's and materialmen's lien statute here involved, the list of items being somewhat similar to that involved in the instant case. There the Court based its decision on the ground that the agreed statement of facts therein did not disclose that the items were reasonably necessary for the preservation and operation, and to prevent the deterioration of the automobile in question.

In the case of Funchess v. Pennington, 205 Miss. 328, 39 So. (2d) 1, 2, it was held that one claiming a lien on a truck for labor and materials furnished in re-

pairing it, as against the holder of a purchase-money lien, has the burden of showing that he has a lien, the amount secured thereby, and that the labor and materials furnished constituted repairs as distinguished from "articles purchased for" the truck or fuel to operate it, and that such labor and materials were reasonably necessary for the preservation and operation of the truck and to prevent its deterioration.

As to whether a new battery, battery cable, additional oil pumps and several sets of "points" were reasonably necessary for the purpose mentioned in the last preceding paragraph would depend upon proof as to the conditions of those of the same kind and character that had been recently purchased for the same purpose at the time the last ones were installed. For instance, the proof in the instant case does not disclose, except by the mere conclusion of the witness, that the battery purchased on July 23, 1947, had become in such a bad state of repair on September 29, 1947, as to require the installation of a new one, and proof is also lacking as to why a number of the other parts charged for were all needed in so short a time since it is unusual that parts of this kind should have to be purchased at such brief intervals following a former purchase of the same articles.

We are constrained to reverse and remand the case, in order that all disallowable items may be purged from the account, for the further reason that it is rather unusual for a service station operator to permit a person, whom he had known only five days, to incur an alleged indebtedness of $553.41 at his station, on a secondhand automobile, and during such a short period of time without requiring any payment on the account. Moreover, if this car used approximately 480 gallons of gasoline between July 23, 1947, and October 7, 1947, it must have been in fairly good running order and may not have needed all of the parts charged for in order to keep it in operation and for its preservation. However, that

issue is for the determination of the trial judge from a preponderance of the evidence in accordance with views hereinbefore expressed as to the items which may be properly allowed.

Reversed and remanded.